**BELL ATLANTIC–WASHINGTON, D.C., INC., Petitioner,**

v.

**PUBLIC SERVICE COMMISSION OF THE DISTRICT OF COLUMBIA, Respondent.**

No. 00–AA–728.

District of Columbia Court of Appeals.

Argued Jan. 23, 2001.
Decided Feb. 22, 2001.

Michael B. Blommer for petitioner. Alice Kelley Scanlon, Silver Spring, MD, filed a brief for petitioner.

Lara E. Howley, Staff Counsel of the Public Service Commission of the District of Columbia, with whom Timothy R. Robinson, General Counsel of the Commission, was on the brief, for respondent.

Before STEADMAN, SCHWELB and GLICKMAN, Associate Judges.

GLICKMAN, Associate Judge:

Today this court is called upon to vindicate the reputation of a public pay telephone owned by petitioner Bell Atlantic–Washington, D.C., Inc. Reversing the findings and decision of its hearing officer, the Public Service Commission determined that the payphone was involved in "illegal or suspicious activity" and ordered its removal. We hold that the record does not support a finding that the payphone in question was used for illegal purposes. We find ourselves uncertain whether the regulations of the Commission authorize it to order removal of a payphone based solely on a finding of "suspicious activity," and if so what the standard of "suspicious activity" means in this context. We therefore remand this matter to the Commission to permit it to speak to those questions in the first instance.

## I.

At issue in this case are two regulations promulgated by the Public Service Commission as part of its Public Pay Telephone rules, set out in Chapter 6 of Title 15 of the District of Columbia Municipal Regulations. The first regulation, 15 DCMR § 605.8 (1998), provides that "[t]he causes for filing a complaint over a public pay telephone shall include, but not be limited to, the following: ... (b) [t]he instrument is being used for illegal purposes; or suspicious activity at the instrument."[1] The second regulation, § 601.9, provides that public pay telephones "found to be used for illegal purposes shall be subject to termination or alteration of service."[2] The term "suspicious activity," which appears in § 605.8, is absent from § 601.9. That term, the meaning of which is critical to this appeal, is not defined and does not appear elsewhere in the Public Pay Telephone rules.[3]

In 1999 a private citizen named Earle Rands filed a complaint with the Commission pursuant to § 605.8 requesting the removal of ten public payphones in a three block stretch of H Street, N.E., on the ground that the payphones were being used for illegal purposes in violation of § 601.9. One of those ten payphones, situated near 1106 H Street, N.E., is the instrument whose fate is at issue in this appeal. An evidentiary hearing was eventually held at which Mr. Rands, a resident

of the neighborhood named Jane Silver, and Sergeant Diane Groomes of the Metropolitan Police Department testified that drug dealing, public drinking, loitering, littering and other forms of disorderly or undesirable conduct occurred in the vicinity of payphones located in the "H Street corridor." The gist of their testimony was that the presence of the payphones encouraged and contributed to the unwelcome street activity that the witnesses described, especially because so many instruments were concentrated in a relatively confined area. As to each particular payphone that was the subject of the complaint, however, the evidence varied.

Mr. Rands and Ms. Silver were able to testify about drug transactions and other objectionable conduct in the vicinity of payphones at 1111, 1122 and 1125 H Street. Neither of them could testify specifically about activity involving the Bell Atlantic payphone at 1106 H Street. Sergeant Groomes testified that she had made an arrest for cocaine distribution at the 1111 H Street payphone, and that she had received complaints from local merchants about other phones. Regarding the payphone at 1106 H Street, Sergeant Groomes testified as follows:

> 1106, okay, that's my biggest problem right now. 1106 H Street .... 1106 is my problem now. In fact, two days ago they complained about [name omitted], my drug dealer on my beat right now. He used to use the ones at 1101, and we

---

1. In its entirety, 15 DCMR § 605.8 reads as follows:

 The causes for filing a complaint over a public pay telephone shall include, but not be limited to, the following:
 (a) Continuous rude, loud or boisterous behavior by persons utilizing the instrument over a period of time;
 (b) The instrument is being used for illegal purposes; or suspicious activity at the instrument; or
 (c) The instrument does not comply with the rules of the Public Service Commission of the District of Columbia.

2. The full regulation reads as follows:
 Public pay telephone instruments shall operate in the public interest and not be used

by owners or customers for illegal purposes. Instruments found to be used for illegal purposes shall be subject to termination or alteration of service.
15 DCMR § 601.9 (1998).

3. It may be relevant, however, to the powers of the Commission in dealing with complaints brought pursuant to § 605.8 to take into consideration § 605.9. That provision of the regulations deals with measures on which the parties themselves may agree to resolve complaints, and includes as subsection (f) the "permanent termination of service of instruments, and removal of the equipment from the area at which the instrument is located."

have arrested him for distribution of crack cocaine.... Two days ago, [a merchant] complain[ed] about [name omitted]. He goes: He's dealing drugs. I'm trying to get more information. Where is he hiding it? He hides it in his crotch. Now, unless we have a legal reason to stop this man and arrest him on something else, we can't just search his groin area for no reason. But that is the—this, 1106, is my number one right now. In fact, it's in front of a vacant building, really, and then the barber shop's on the corner, like right catercorner to it. And that's the problem. And there's steps that a lot of the homeless people sit on.

This was the only testimony at the hearing specific to Bell Atlantic's payphone at 1106 H Street, N.E.

The hearing officer ruled that the evidence was insufficient to establish that any of the payphones in issue were being used for illegal purposes in violation of 15 DCMR § 601.9.[4] With respect to the payphone at 1106 H Street, N.E., the hearing officer stated:

> The only evidence concerning the 1106 H Street payphone was Sgt. Groomes' testimony regarding citizen complaints about loitering and possible illegal activity occurring around that payphone. Sgt. Groomes did not testify that she had observed illegal activity occurring on that payphone, so there is no concrete evidence that illegal activity has occurred on that payphone.

Mr. Rands' request for an order removing the payphones on H Street, N.E. was denied.

On appeal to the full Commission, the Office of the People's Counsel (represent-ing Mr. Rands pursuant to D.C.Code § 43–406(d)(3) (1998)) argued that the hearing officer should have considered whether the evidence established "suspicious activity" at the payphones in question. Bell Atlantic and the other payphone owners did not object to this retroactive broadening of the inquiry, and the Public Service Commission agreed that under 15 DCMR § 605.8, the hearing officer's "failure to consider" evidence of "suspicious activity" was reversible error. Deciding to reconsider the evidence itself on the record before it, the Commission found that there was sufficient "illegal or suspicious activity occurring at five of the instruments subject to the hearing" to justify ordering their removal. *Id.* The Commission included the payphone at 1106 H Street among the five because "Sergeant Groomes considered the 1106 H Street payphone her major problem, implying that a known drug dealer used this payphone." *Id.* On motion for reconsideration, the Commission adhered to its ruling. Stating that "Sergeant Groomes' testimony was corroborated by the complainant and Ms. Silver, who testified about suspicious activity at all of the payphones on the 1100 block of H Street," the Commission reaffirmed that the evidence sufficed for it to determine that the 1106 H Street payphone "was being used for illegal or suspicious activity."

■ Bell Atlantic petitioned this court to review the Commission's order, but only with respect to the payphone at 1106 H Street. Bell Atlantic's principal contention on appeal is that the finding of illegal or suspicious activity at that instrument is not supported by substantial evidence in the record.[5]

---

4. The hearing officer summarized his assessment of the evidence as follows:

> Most of the testimony related to unpleasant and possibly illegal activity in the vicinity of the payphones. But no testimony demonstrated that the payphones were actually being used for drug-related or other illegal activity.... [T]he witnesses could only speculate about the activity occurring on the payphones. Absent a showing that illegal activity was conducted on the payphones, not merely around the payphones, the Complainant has not met the burden of proof required for removing them.

5. In its reply brief, Bell Atlantic argues for the first time that the Commission impermissibly

## II.

Under D.C.Code § 43–906 (1998), our review of orders of the Public Service Commission is limited to questions of law; "and the findings of fact by the Commission shall be conclusive unless it shall appear that such findings of the Commission are unreasonable, arbitrary, or capricious." [6] Applying § 43–906, we inquire whether the Commission could reasonably conclude that the 1106 H Street payphone was being used for either illegal or suspicious activity.[7]

 The hearing officer found that there was insufficient evidence that the payphone was used for illegal purposes. The Commission, content to find evidence of "illegal *or* suspicious activity" without distinguishing between the two, did not squarely reject the hearing officer's finding on this point. We are compelled to agree with the hearing officer. Although Sergeant Groomes called the payphone at 1106 H Street her "biggest problem," neither she nor any other witness testified to facts showing that it was indeed used for illegal purposes. At most, the Sergeant testified that she had received an unverified complaint that a suspect was using the payphone to deal drugs, and that she had observed homeless people congregating in the vicinity of the payphone. Even taking into consideration the testimony about un-

savory activities around payphones in the H Street corridor generally, the evidence that the payphone located at 1106 H Street was utilized for unlawful ends fell short of providing a reasonable basis for the Commission's conclusion.

 Should we nonetheless affirm on the alternative ground that there is sufficient evidence that the payphone at 1106 H Street was involved in "suspicious activity"? When we turn to this question, we are unable to avoid two threshold issues that the parties before us have not addressed. The first is the meaning of "suspicious activity." If we do not know what "suspicious activity" signifies, we cannot know if there is sufficient evidence of it. But this poses a problem. The term "suspicious activity" is not defined in the regulations. The Commission did not explain what it meant by "suspicious activity" in its decision in this case. Nor, we were informed at oral argument, has the Commission construed the term in any of its prior decisions.

Absent a clarifying construction, the term "suspicious activity" could have a range of possible meanings. *Cf. Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972) ("if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them").

---

expanded the issues when it considered whether there had been a violation of 15 DCMR § 605.8, since that issue was not raised before the hearing officer. Even if Bell Atlantic did not waive this claim by failing to object before the Commission, it did so by failing to include it in its main brief. *See Joyner v. Jonathan Woodner Co.,* 479 A.2d 308, 312 n. 5 (D.C.1984) (under D.C.App. R. 28(c), it is improper to raise new issues or matters not addressed in appellee's brief in reply brief).

6. For the purposes of this appeal, Bell Atlantic and the Commission have framed the issue as being whether the Commission's findings of fact in this case are supported by "substantial evidence," a term that does not appear in § 43–906. As to the accuracy of this characterization, *compare Office of People's Counsel*

*v. Public Serv. Comm'n,* 610 A.2d 240, 243 (D.C.1992) with *Washington Gas Light Co. v. Public Serv. Comm'n,* 450 A.2d 1187, 1193 (D.C.1982).

7. It might have been supposed that even absent evidence that a particular payphone is involved in illegal or suspicious activity, the Commission has the power to order removal if it finds that the presence of payphones in a given area is likely to contribute to street crime or neighborhood deterioration and is therefore contrary to the public interest. However, the Commission has not defended its order on such a ground, and we therefore express no opinion as to whether the Commission has such power, or as to whether the evidence in this case would support a removal order on such a basis.

For example, there was considerable testimony at the hearing in this case about "loitering" in the vicinity of payphones. It was acknowledged that loitering is not an offense. But is loitering "suspicious"? Similarly, is it sufficiently "suspicious" that a person who (per Sergeant Groomes) had previously been arrested for drug distribution was seen near a payphone? A natural construction of the term "suspicious activity" would be that it means reasonable articulable suspicion of criminal activity, a familiar enough standard from Fourth Amendment jurisprudence. But it is up to the Commission, not to us, to decide if that interpretation or some other is what it meant.[8]

The second threshold issue is whether the Public Pay Telephone regulations authorize the Commission to order removal of a payphone based solely on a finding of "suspicious activity" (however defined). While § 605.8 states that "suspicious activity at the instrument" is "cause" for filing a complaint about a payphone, that is the only mention of "suspicious activity" to be found in the regulations. In contrast, § 601.9, the section that specifically requires public payphones to be operated in the "public interest," provides for termination of service only if an instrument is found to be used for "illegal purposes." Because that section does not purport expressly to authorize termination based on "suspicious activity," it is, for example, possible to read §§ 605.8 and 601.9 in tandem to mean that a complaint may be based on suspicion of illegal activity, but that such activity must be proven in order for the Commission to order relief. It is also possible, however, to read the regulations—as, it may be said, the Commission did implicitly—to authorize the Commission to order removal of a payphone if it finds suspicious activity at the phone and nothing more.

8. We therefore express no opinion at this time with respect to the sufficiency of the evidence

"[W]e ordinarily defer to the [agency's] interpretation of ... the agency's own regulations." *KOH Sys.v. District of Columbia Dep't of Employment Servs.*, 683 A.2d 446, 449 (D.C.1996). Here, however, the Commission has not addressed explicitly the interpretive issues that we perceive. Absent any sign that the Commission recognized those issues and actually did undertake to resolve them, we are reluctant to assume an implicit resolution based solely on the Commission's ultimate decision in this case. In the absence of "a clear exposition of the legal principle or principles underlying the agency decision," we are not prepared to affirm or reverse the order on appeal. *Long v. District of Columbia Dep't of Employment Servs.*, 570 A.2d 301, 302 (D.C.1990). We think the soundest course is to remand this matter so that the Commission may address the issues we have identified in further proceedings not inconsistent with this opinion.

*So ordered.*

to meet any particular interpretation.