**OFFICE OF the PEOPLE'S COUNSEL, Petitioner,**

v.

**PUBLIC SERVICE COMMISSION OF the DISTRICT OF COLUMBIA, Respondent,**

and

**Verizon Washington, DC Inc. and Washington Gas Light Company, Intervenors.**

No. 07–AA–1328.

District of Columbia Court of Appeals.

Argued May 29, 2008.
Decided Aug. 28, 2008.

Brenda K. Pennington, Assistant People's Counsel, with whom Elizabeth A. Noël, People's Counsel, and Sandra Mattavous–Frye, Deputy People's Counsel, were on the brief, for petitioner.

Marc J. Williams, with whom Richard A. Beverly, was on the brief, for respondent.

Jamellah Ellis, with whom David A. Hill, Lydia R. Pulley, New York City and Natalie O. Ludaway, Washington, DC, were on the brief, for intervenor Verizon Washington, DC Inc.

Cathy Thurston–Seignious, Beverly J. Burke, Washington, DC, and Bernice K. McIntyre, filed a brief for intervenor Washington Gas Light Company.

Before RUIZ, BLACKBURNE–RIGSBY and THOMPSON, Associate Judges.

THOMPSON, Associate Judge:

In this case we are presented with a petition by the Office of the People's Coun-

sel ("OPC") challenging two orders of the Public Service Commission of the District of Columbia (the "Commission")—Order No. 14392, issued on July 25, 2007, and Order No. 14596, issued on October 9, 2007, both arising out of OPC's request for a determination that the Commission is required to publish the local-revenue data that the Commission collects from public utilities pursuant to statutory mandate. The Commission ruled that it would treat OPC's request as a request for a declaratory order (rather than as a request to determine whether the revenue data that the utilities submitted for calendar year 2005 were proprietary and confidential) and, in its subsequent declaratory order, determined that local-revenue data that a public utility designates as proprietary may, on a case-by-case basis, be entitled to confidential treatment. Because we conclude that the Commission's rulings were not unreasonable, we affirm.

## I.

Pursuant to D.C.Code § 34–912(b)(3), the budgets of the Commission and OPC are funded in part through reimbursement fees charged to public utilities.[1] The reimbursement fee paid by each of the utilities is to reflect its "revenues ... derived from utility operations in the District of Colum-

bia"—what the parties have referred to as each utility's "gross jurisdictional revenues"—as a percentage of the revenues of all public utilities operating in the District. *Id.*

On July 21, 2006, and August 11, 2006, after receiving revenue data from utility companies, the Commission published in the D.C. Register Notices of Proposed Reimbursement for Public Utilities ("NOPRs"), addressing the reimbursement fees to be paid by intervenor Verizon Washington, DC Inc. ("Verizon"), by intervenor Washington Gas Light Company (WGL), and by the Potomac Electric Power Company (PEPCO). The NOPRs specifically identified the dollar amount of "revenues of all public utilities from utility operations in the District of Columbia" and also identified the dollar amounts of the Commission and OPC budgets to be funded through reimbursement fees. However, redacted from the NOPRs were the dollar amounts of each individual public utility's gross jurisdictional revenues and the dollar amount of reimbursement fees (and the percentage of total reimbursement fees) to be charged to each individual public utility (information that could be used to discover the amount of each utility's jurisdictional revenues).[2]

---

1. D.C.Code § 34–912(b)(3) states:

 The amount of the reimbursement fee to be paid by each public utility ... shall be equal to the product of the amounts appropriated ... multiplied by the fraction, as determined by the Mayor, represented by the revenues of such public utility derived from utility operations in the District of Columbia that are regulated by the Public Service Commission during the immediately preceding fiscal year (or other 12–month period as the Mayor may designate), divided by the gross revenues of all public utilities from utility operations in the District of Columbia during such period.

2. Thus, for example, the NOPR pertaining to the assessment against Verizon to cover its

portion of the Commission's budget states in pertinent part:

 The Commission determines that $1,146,954,245.00 were the total 2005 calendar year revenues of all public utilities from utility operations in the District of Columbia that are regulated by the Commission. The Commission further determines that Verizon's total calendar year revenues for calendar year 2005 were $ [**PROPRIETARY**]. For Fiscal Year 2006, the Mayor proposed and the Council of the District of Columbia approved an appropriated budget of $7,976,308.00 for the Commission. Of this amount, the Commission receives a grant from the federal government for $124,000 to administer natural

OPC acknowledges that "[n]o comments or opposition were filed directly in response to the NOPRs" within the thirty-day comment period. But, on August 24, 2006, OPC did file a "Motion for Clarification" of the NOPRs, asking the Commission "how the total calendar year gross revenue data from the District's regulated utilities is proprietary when such information is [OPC contended] already public information."[3] On September 12, 2006, while OPC's motion was still pending, the Commission published the final NOPRs in the D.C. Register. Thereafter, on September 27, 2006, the Commission issued Order No. 14068 in response to OPC's motion, explaining that because "no one challenged any of the three utilities' proprietary designation of [their] revenue information," the Commission had "made no determination that any of the information alleged to be confidential is *entitled* to proprietary treatment," but instead "simply followed [Commission] rules regarding the proper treatment of information when the filing party has alleged confidentiality" (emphasis in the original).

On January 19, 2007, OPC filed with the Commission a document entitled "Challenge to Verizon DC's, WGL's, and PEPCO's Designation of Information Regarding Their Respective Jurisdictional Revenues As Confidential and Proprietary Information Determination Request." On February 21, 2007, the Commission ruled, in Order No. 14218, that it would treat OPC's filing as a request for a declaratory order pursuant to D.C.Code § 2–508 and 15 DCMR § 144,[4] rather than as a Proprietary Information Determination Request ("PIDR") governed by 15 DCMR § 150.5. Treating OPC's filing as a request for a declaratory order,[5] the Commission invited public comment on "whether the revenue information of public utility companies, provided solely for the purpose of determining their share of the Commission's and OPC's operating budgets, is ever properly marked confidential under 15 DCMR § 150."

On July 25, 2007, the Commission issued Order No. 14392, in which it concluded that District of Columbia law "neither prohibits companies from marking their revenue information as confidential nor does it require the Commission to publish such information in the *D.C. Register* or in its

gas pipeline safety in the District. The Commission must assess for the remaining portion of our FY 2006 budget, which is $7,852,308.00. Accordingly, based on the formulas in D.C.Code § 34–912(b)(3) and 15 DCMR § 1301.1, the Commission determines that Verizon's portion of the Commission's appropriated budget for FY 2006 is [PROPRIETARY] percent, for a total assessment of $ [PROPRIETARY].
53 D.C.Reg. 6585, 6585–86 (2006).

3. Verizon filed a response in opposition to OPC's motion, in which it asserted that retail local service revenues are not published or available from any public source.

4. D.C.Code § 2–508 states that "[o]n petition of any interested person, the Mayor or an agency, within their discretion, may issue a declaratory order with respect to the applica-

bility of any rule, regulation, Council act or resolution, or statute enforceable by them or by it, to terminate a controversy (other than a contested case) or to remove uncertainty...." 15 DCMR § 144.1 provides that "[u]pon written petition of any interested person, the Commission, within its discretion, may issue a declaratory order regarding the applicability of any rule, regulation, or statute enforceable by it, to terminate a controversy (other than a contested case) or to remove uncertainty."

5. The Commission later explained, in Order 14596, that it treated OPC's filing as a request for a declaratory ruling rather than as a PIDR, because "the time period for reconsideration of the Commission's decision to treat the companies' fiscal year 2006 assessment revenue information as confidential had passed."

orders." Although observing that "information that competitors can use to derive a company's profit margin could constitute serious competitive harm," the Commission declined to address whether any of the public utilities' claims of confidentiality with respect to the data they supplied in 2006 or any other particular year should be upheld. The Commission explained that it "decline[d] to engage in the arbitrary exercise of determining whether a disclosure of revenue information at some future date, under marketplace conditions that have yet to materialize, is or is not likely to cause substantial competitive harm." The Commission further stated that its Order "in no way impairs a party's ability to contact the party claiming its information is proprietary for an appropriate proprietary agreement [*see* 15 DCMR § 150.4(a)], or to challenge a proprietary claim in an ongoing matter pursuant to [15 DCMR] § 150.4 [(b) and § 150.5]."

On August 24, 2007, OPC filed an Application for Reconsideration of Order No. 14392. The Commission denied the application on October 9, 2007, by Order No. 14596. OPC's petition to this court followed.

## II. Standard of Review

 Our review of the Commission's decisions is governed by D.C.Code § 34–606, which states that "[i]n the determination of any appeal from an order or decision of the Commission the review by the Court shall be limited to questions of law, including constitutional questions; and the findings of fact by the Commission shall be conclusive unless it shall appear that such findings of the Commission are unreasonable, arbitrary, or capricious." Under the general limited review that we undertake of any agency decision, "we must affirm unless we conclude that the agency's ruling was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance

with law." *King v. District of Columbia Water & Sewer Auth.*, 803 A.2d 966, 968 (D.C.2002). We ordinarily defer to the Commission's reasonable interpretation of its own regulations. *Bell Atlantic–Washington, D.C., Inc. v. Public Serv. Comm'n*, 767 A.2d 262, 267 (D.C.2001); *see also Dankman v. District of Columbia Bd. of Elections & Ethics*, 443 A.2d 507, 514 (D.C.1981) ("Unless plainly erroneous, an agency's interpretation of its own regulation will be accorded deference"). However, we owe no particular deference to the Commission with respect to its interpretation of the Freedom of Information Act ("FOIA"), D.C.Code §§ 2–531 to –539; as to this our review is *de novo*, because the FOIA is "a statute of general applicability rather than one whose primary administration has been delegated to" the Commission. *Johnson v. SEC*, 318 U.S.App. D.C. 250, 87 F.3d 484, 486 (D.C.Cir.1996); *see also Proffitt v. FDIC*, 339 U.S.App. D.C. 397, 200 F.3d 855, 860 (D.C.Cir.2000) (reasoning that when a statute is administered by more than one agency, a particular agency's interpretation is not entitled to special deference (citing *Bowen v. American Hosp. Ass'n*, 476 U.S. 610, 643 n. 30, 106 S.Ct. 2101, 90 L.Ed.2d 584 (1986)) (because multiple agencies promulgated rules under statute, there was no basis for deference predicated on special expertise)).

## III. Discussion

*A. The Commission's Treatment of OPC's January 17, 2007 Filing as a Request for a Declaratory Order*

 OPC contends that the Commission erred in recasting OPC's January 19, 2007 filing as a request for a declaratory order. It argues that the Commission should have treated the filing as a PIDR under 15 DCMR § 150.5, with the result that each of the utilities should have been required

to "file an initial brief stating in detail the basis of its proprietary claim" and to bear "[t]he burden of ultimately persuading the Commission that the subject information is proprietary." 15 DCMR § 150.5(d) and (e).

We are not persuaded by OPC's argument. The Commission's decision not to treat OPC's January 19, 2007 filing as a PIDR was consistent with the Commission's interpretation that 15 DCMR § 150, the Commission regulation that sets forth the procedures for challenging "the appropriateness of a claim that information is proprietary or confidential," 15 DCMR § 150.3(e), permits challenges to a proprietary claim only "in an ongoing matter." Order 14392 at 5. We owe deference to that interpretation, because it is consistent with the regulatory language (which describes procedures by which a "party" may challenge a proprietary claim) and also reasonable in light of the circumstances in which utilities submit information to the Commission. *See Dankman*, 443 A.2d at 514 ("When the [Commission] attempts to apply its own regulations, we cannot substitute our judgment if the [Commission's] is reasonable"). It is not unreasonable for the Commission to adhere to a policy under which-where a utility has submitted revenue information to enable the Commission to assess a reimbursement fee and the Commission has proposed, finalized and collected the reimbursement fee without objection during the comment period-

utility revenue data are no longer subject to the PIDR process once the limited purpose for which the Commission required the information has been achieved.[6]

OPC asserts that 15 DCMR § 150.5 "provides that a party may at any time challenge a claim of confidentiality" through a PIDR, but we think the regulatory language does not compel that reading. The relevant language—that the prescribed procedures shall apply "[i]f at any time" a party challenges a claim of the party who asserts that its information is proprietary, 15 DCMR § 150.5—is reasonably read, as the Commission reads it, to mean "if at any time during a proceeding." OPC also argues that because the Commission maintains Formal Case No. 712 as an ongoing umbrella proceeding in which "a myriad of matters [including the ones in issue here] are filed by various parties and addressed by the Commission," OPC's January 2007 "PIDR" was in fact filed "in an ongoing matter" in which OPC was a party.[7] But—notwithstanding the Commission's case management and numbering system, the logic of which escapes us—we think OPC's argument ignores the reality that the Commission's process of setting reimbursement fees for the fiscal year 2006 Commission and OPC budgets had been completed for several months by the time OPC filed its purported PIDR.

Nor did the Commission act unreasonably in treating OPC's January 19, 2007 filing as a request for a declaratory order.[8]

---

6. This policy would not necessarily preclude a person from obtaining access to the information through some means other than a PIDR-such as through a FOIA request, if the information is not exempt from disclosure. *See* 15 DCMR § 704.4 (2008) (entitled "FOIA Exemptions from disclosure").

7. OPC advises the court that the utilities "file[ ] their jurisdictional revenue on Formal Case No. 712 on an annual basis."

8. In light of our resolution of this issue, we need not address the Commission's argument that, by failing to make a timely request for reconsideration of Order No. 14218, *see* D.C.Code § 34–604(b) (establishing thirty-day period within which to request reconsideration of Commission orders and providing that "[n]o appeal shall lie" from a Commission order in the absence of a timely reconsideration request), OPC waived its right to challenge the Commission's decision to treat

Although labeled as a PIDR, OPC's request contained language from which the Commission could reasonably conclude that OPC sought both a broad ruling as to what treatment could be afforded to utilities' jurisdictional revenue information in the future (rather than a ruling with respect to information that the utilities submitted as the basis for the July and August 2006 NOPRs) and an opinion about whether the Commission was required to publish such revenue information. OPC specified, in boldface type, that it sought a ruling as to "whether the revenue data filings that [the utilities] file with the Commission in response to the Commission's request for each companies' [sic] gross jurisdictional revenues *for a specified year,* for purposes of determining the reimbursement fee to be paid by each company pursuant to D.C.Code Section 34–912(b)(3), are confidential or proprietary; and whether such revenue data filings should be available for review by District of Columbia ratepayers *and set forth in Notices of Proposed Reimbursement for Public Utilities published by the Commission"* (italics supplied). Thus, OPC's filing went well beyond a request to obtain particular proprietary information, which is what the procedures set out in 15 DCMR § 150.5 address. *See* 15 DCMR § 150.4 ("If a party ... desires to obtain proprietary information from a party that has the information ..., the requesting party shall ... [f]ile with the Commission for a Proprietary Information Determination under § 150.5"). We think the Commission reasonably read OPC's filing to request what 15 DCMR § 144.1 authorizes the Commission to issue, *i.e.,* "a declaratory order regarding the applicability of any rule, regulation, or statute enforceable by it, to terminate a controversy (other than a contested case) or to remove uncertainty."[9]

## B. The Confidentiality of the Public Utilities' Jurisdictional–Revenue Filings

■ OPC next contends that the Commission should have held that the revenue data that the utilities submit to enable the Commission to determine the reimbursement fee to be paid by each company must be deemed public and must be published in NOPRs and made available for review by ratepayers.[10] OPC relies on the FOIA provisions at D.C.Code § 2–536(a)(5) and (6), which state that

Without limiting the meaning of other sections of this subchapter, the following categories of information are specifically made public information, and do not require a written request for information: ...

OPC's January 19, 2007 filing as a request for a declaratory order. OPC contends that its challenge is timely because the Commission's decision to treat the January 19, 2007 filing as a request for a declaratory order became final only when the Commission issued Order 14392.

9. Among other things, although it did not do so explicitly, OPC's filing appeared to require an interpretation of 15 DCMR § 1302.1, which provides that "Not later than thirty (30) days following the start of each fiscal year, the Commission shall publish the following information in the District of Columbia Register: ... (b) The total of the gross revenues of each public utility ... for the preced-

ing calendar year." As the parties discussed at oral argument, Order 14392 reflects an interpretation that this regulation does not require publication of gross jurisdictional revenues by individual utility.

10. Alternatively, OPC argues, the Commission should have "undertake[n] the type of evidentiary analysis necessary to make ... a determination" as to whether disclosure of each utility's jurisdictional revenue data would cause a "likelihood of substantial competitive injury" and thus whether the data meet the criteria for treatment as confidential and proprietary.

(5) Correspondence and materials referred to therein, by and with a public body, relating to any regulatory, supervisory, or enforcement responsibilities of the public body, whereby the public body determines, or states an opinion upon, or is asked to determine or state an opinion upon, the rights of the District, the public, or any private party; (6) Information in or taken from any account, voucher, or contract dealing with the receipt or expenditure of public or other funds by public bodies. . . .

Section 2–536(b) states that "[f]or records created on or after November 1, 2001, each public body shall make records available on the Internet or . . . by other electronic means." Nothing in section 2–536 requires that "public information" be published in the D.C. Register.

In Order 14392, the Commission acknowledged that the District's FOIA favors public disclosure of information in public records and, through section 2–536, requires generally that some categories of information be treated as public information and made available without written request. Order 14392 at 4, citing D.C.Code §§ 2–532 and 2–536(a). The Commission noted, however, that D.C.Code § 2–534 exempts from disclosure some information, including "[t]rade secrets and commercial or financial information obtained from outside the government, to the extent that disclosure would result in substantial harm to the competitive position of the person from whom the information was obtained." D.C.Code § 2–534(a)(1). Without making a determination as to whether any of the public utilities had demonstrated or would be able at some future date to demonstrate

the likelihood of substantial competitive injury from release of particular revenue data—an omission that OPC argues constituted an abrogation of the Commission's statutory responsibility—the Commission noted that both Verizon and Washington Gas had asserted that disclosure of their revenue information would put them at a competitive disadvantage.

We have some doubt about (but need not decide for purposes of this opinion) whether public-utility jurisdictional revenue data fall within the scope of information described in D.C.Code 2–536 §§ (a)(5) or (a)(6).[11] However, even if the revenue data do fall within the scope of one or both of these provisions, we agree with the Commission's reasoning that section 2–536(a) does not mandate disclosure of data that satisfy the requirements of D.C.Code 2–534(a). We base this conclusion on the introductory language of section 2–536(a), which declares broad categories of information to be public "[w]ithout limiting the meaning of other sections of this subchapter." We construe that qualifying language to denote that information that is determined to be exempt from disclosure under section 2–534(a) need not be treated as public information and made available pursuant to section 2–536.

It might be objected (assuming that the utility jurisdictional revenue data fall within sections 2–536(a)(5) or (6)) that, without the Commission having made a specific determination that a utility's revenue data are exempt from disclosure under D.C.Code § 2–534(a)(1) as financial information whose disclosure would result in substantial competitive harm, the Commission lacks a basis for refusing to treat the data as public information under section 2–

---

**11.** It is not clear that the revenue data are materials in correspondence with the Commission whereby the Commission determines the rights of any person, *see* D.C.Code § 2–

536(a)(5), and we have been presented with no information that suggests that these revenue data are taken from an *"account, voucher, or contract," id.,* § *2–536(a)(6).*

536(a). The answer to this point is that the Commission's FOIA regulations provide that "[a]ny document filed under seal which is alleged by a party to contain proprietary information *shall be deemed excepted from disclosure* pursuant to [section 2–534(a)(1)], unless the Commission, after notice to the affected party and opportunity to be heard, orders that [section 534(a)(1)] does not apply." 15 DCMR § 704.3 (italics added). We are satisfied that, at least where (as here) it is not manifest that the information in question is "public information," the Commission's regulation deeming the information confidential until a challenge is resolved is not unreasonable.[12]

The Commission's regulations further provide that "[w]hen alleged proprietary information is the subject of a FOIA request," the General Counsel is required to notify the party whose information is the subject of the request and to provide both that party and the requestor an opportunity to file responses, after which the Commission shall "issue an order regarding whether the alleged proprietary information is exempt from disclosure." 15 DCMR §§ 704.4(a)-(d). In short, if OPC or any member of the public makes a request under FOIA for the revenue data that the utilities have designated as proprietary, the Commission will need to determine promptly whether the claimed proprietary information actually is exempt from disclosure.[13] Thus, neither the Commission's Orders under review here, nor this opinion, necessarily cuts off OPC's or the public's recourse to utility jurisdictional-revenue data for fiscal year 2006 or any other year. We also note that, in particular proceedings in the future, OPC-which has party status in any Commission proceeding pursuant to D.C.Code § 34–804(a)–also will have the option of obtaining information by entering into a proprietary agreement with any utility that asserts that its information is proprietary, *see* 15 DCMR § 150.4(a), or by challenging a utility's claim of confidentiality through a timely PIDR. *See* 15 DCMR § 150.4(b).

---

12. We note that a number of federal agencies have similar regulations that explicitly permit "business submitters" or "submitters of business information" to designate information submitted to the agency as confidential and proprietary, and that provide that, upon the agency's receipt of a request for such information, the agency will notify the submitter and afford the submitter an opportunity to respond with information substantiating the claim of confidentiality, to enable the agency to make a determination about whether the information is exempt from disclosure. *See, e.g.*, 12 C.F.R. § 1703.18 (Department of Housing and Urban Development regulation); 29 C.F.R. § 70.26 (Department of Labor regulation); 36 C.F.R. 1600.7 (Department of Interior regulation); 39 C.F.R. 265.8 (Postal Service regulation); 40 C.F.R. 1601.26 (Environmental Protection Agency regulation); *see also OSHA Data/CIH, Inc. v. U.S. Department of Labor*, 220 F.3d 153, 166 (3d Cir.2000) (upholding DOL's application of its regulation, 29 CFR § 70.26, that requires a FOIA requester to pay the agency's costs of notifying submitters of business information that a FOIA request has been made for information that the submitters designated as confidential).

13. The record shows that on August 17, 2006, Anne Loikow, a District of Columbia ratepayer and consumer activist, wrote a letter to Commissioners requesting that the Commission "fully and completely inform the public of the percentages and amounts that the entities the Commission assesses are required to provide for the Commission's operations." The Commission apparently did not treat this request as a FOIA request. We note that Commission regulations require that "[a]ny person requesting copies of Commission records, or access to Commission records, pursuant to the FOIA, shall submit the request to the General Counsel," 15 DCMR § 700.3, and that "[f]or the purposes of this chapter, a 'request' means a single demand for any number of documents made at one time to the General Counsel." *Id.*, § 700.4.

Accordingly, while we can agree with OPC that the Commission's redacted NOPRs, *see* note 2 *supra,* were singularly unhelpful to OPC in carrying out its statutory responsibility to assure that public-utility ratepayers' interests are adequately represented in proceedings before the Commission, *see* D.C.Code § 34–804(d)(5), we are not persuaded by OPC's contention that an order by this court requiring publication of the revenue data in NOPRs is the only way "to determine if the Commission has correctly applied the [statutory] reimbursement formula."

For the foregoing reasons, Commission Orders 14392 and 14596 are

*Affirmed.*