*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 18-CV-1238

WIDMON BUTLER, APPELLANT,

v.

METROPOLITAN POLICE DEPARTMENT, et al., APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(CAP-7843-17)

(Hon. Anthony C. Epstein, Trial Judge)

(Argued January 29, 2020                          Decided October 29, 2020)

*David A. Branch* for appellant.

*Carl J. Schifferle*, Senior Assistant Attorney General, with whom *Karl A. Racine*, Attorney General for the District of Columbia, *Loren L. AliKhan*, Solicitor General, and *Caroline S. Van Zile*, Deputy Solicitor General, were on the brief, for appellee Metropolitan Police Department.

*Lasheka Brown Bassey* filed a statement in lieu of brief for appellee Office of Employee Appeals.

Before BLACKBURNE-RIGSBY, *Chief Judge*, and GLICKMAN and MCLEESE, *Associate Judges*.

MCLEESE, *Associate Judge*: Appellant Widmon Butler challenges a decision

of the Office of Employee Appeals (OEA) upholding his termination by the

Metropolitan Police Department (MPD). Mr. Butler argues primarily that MPD waited too long before terminating him. We remand for further proceedings with respect to that issue.

## I.

Except as indicated, the following facts are undisputed. Mr. Butler, who is an attorney, worked as a claims specialist in MPD's Medical Services Division. His duties included helping to determine whether MPD employees' injuries and illnesses arose in the performance of duty. In July 2013, Mr. Butler's union asked him to represent another union member and MPD civilian employee, Ms. Josephine Jackson, in a proceeding before the District of Columbia Office of Risk Management (ORM). He agreed. As part of this representation, Mr. Butler emailed ORM in August 2013 to request that ORM reconsider three workers' compensation claims that Ms. Jackson had filed. Mr. Butler sent the email from his MPD account, identifying himself as an attorney.

On September 12, 2013, ORM's General Counsel contacted MPD's Human Resources Management Division with concerns about Mr. Butler's email. Specifically, ORM's General Counsel noted that Mr. Butler had apparently sent the

email from his MPD account during work hours, even though he represented Ms. Jackson privately. ORM's General Counsel also stated that Mr. Butler's position as a claims examiner working in connection with MPD's clinic raised conflict-of-interest issues, because Ms. Jackson had been treated at that clinic.

The same day, MPD's Human Resources Director contacted MPD's Internal Affairs Division (IAD) to request that IAD look into Mr. Butler's conduct. IAD assigned Sergeant Paulette Woodson to do so. On September 18, 2013, Sergeant Woodson emailed the United States Attorney's Office (USAO) to notify the USAO that she was investigating whether Mr. Butler had "double-dipped," i.e., handled private matters during his MPD work hours. Later the same day, the Medical Services Division created a report indicating that Mr. Butler had accessed Ms. Jackson's medical records in July 2013, while on duty. The next day, September 19, 2013, MPD placed Mr. Butler on administrative leave without pay pending the investigation into his conduct, including into whether Mr. Butler had accessed Ms. Jackson's medical records without authorization.

On October 1, 2013, MPD referred the matter to the USAO, asking the USAO to determine whether criminal charges should be brought against Mr. Butler for illegally accessing MPD's medical database by viewing Ms. Jackson's files for his

own personal purposes. Eight months later, on June 2, 2014, the USAO issued a letter declining to criminally prosecute Mr. Butler.

MPD then conducted its own disciplinary investigation. IAD interviewed Mr. Butler in September 2014. Mr. Butler denied accessing or seeing Ms. Jackson's medical records, even after being shown a report indicating the date and time on which he had opened her file. On October 6, 2014, MPD served Mr. Butler with a notice of proposed termination, charging him with misfeasance for (1) accessing Ms. Jackson's medical records in violation of MPD's acceptable-use agreement; (2) misusing government property; and (3) making untruthful statements during an IAD interview.

MPD Commander Keith Williams subsequently recommended that Mr. Butler be terminated, rejecting Mr. Butler's claim that the notice of proposed termination was untimely under the "ninety-day rule." *See* D.C. Code § 5-1031(a-1)(1) (2019 Repl.) (requiring MPD to commence adverse action against employees no more than ninety business days after MPD had notice of act or occurrence allegedly constituting cause); D.C. Code § 5-1031(b) (ninety-day period is tolled while act or occurrence allegedly constituting cause is subject of criminal investigation by, among other agencies, MPD and USAO). Specifically, Commander Williams

concluded that MPD considered Mr. Butler's conduct criminal as soon as MPD found out about the conduct, and the ninety-day limit therefore did not start running until June 2, 2014, when the USAO declined to prosecute.

MPD subsequently terminated Mr. Butler, who appealed his termination to MPD Chief Lanier, arguing primarily that the ninety-day rule barred the termination. Chief Lanier disagreed, reiterating that MPD had considered Mr. Butler's actions criminal since their discovery on September 12, 2013. Chief Lanier further explained that Mr. Butler's termination was also based on his untruthful statements to IAD, which were made only six days before the notice of termination was issued.

Mr. Butler appealed his termination to the Office of Employee Appeals (OEA), which conducted an evidentiary hearing before an Administrative Judge (AJ). Sergeant Woodson, the IAD investigator, testified that she determined that Mr. Butler's conduct had "criminal overtones," because of the indications that he had been working on behalf of private clients during his work hours for MPD. MPD introduced evidence at the hearing that Mr. Butler acted unlawfully by accessing the electronic file containing Ms. Jackson's MPD medical records, which he had kept open for over fifty minutes. There also was evidence that Mr. Butler had made a false statement to IAD about his conduct.

Mr. Butler testified in his own defense, contending in essence that although he had opened Ms. Jackson's file, he had not actually reviewed her medical records.

The AJ found that Mr. Butler had unlawfully accessed Ms. Jackson's medical records and had falsely denied to MPD that he had done so. The AJ remanded the matter to MPD, however, for further consideration of the applicable penalty. On that point, the AJ concluded that Mr. Butler could be terminated for the misconduct at issue only if he had committed two prior offenses of misfeasance, but MPD had provided evidence only of one prior instance of misfeasance. The AJ therefore ordered MPD to reconsider its penalty of termination and inform the AJ of its ultimate penalty. MPD responded by adhering to its decision to terminate Mr. Butler and providing the AJ with evidence of a second prior offense of misfeasance by Mr. Butler.

The AJ issued an "initial decision" upholding the termination. The AJ determined that MPD did not violate the ninety-day rule. On that issue, the AJ indicated that the ninety-day period started running on September 12, 2013, when MPD was first notified by ORM of Mr. Butler's possible misconduct. The AJ further concluded that the ninety-day period was tolled from October 1, 2013, to September

25, 2014 -- from the day the matter was referred to the USAO until the day IAD issued its investigative report. The AJ therefore calculated that only eighteen untolled business days had passed when Mr. Butler received the notice of termination on October 6, 2014.

On the merits, the AJ determined that Mr. Butler committed misfeasance by accessing medical records without authorization; that Mr. Butler lied to IAD when he denied doing so; and that Mr. Butler had committed two prior offenses justifying the penalty of termination. Finally, the AJ overruled Mr. Butler's objection that the record had closed after the evidentiary hearing and that MPD was thus precluded from introducing new evidence of prior misfeasance on remand.

Mr. Butler appealed to the OEA Board. The Board upheld the AJ's determination that MPD did not violate the ninety-day rule, although the Board's analysis of that issue differed from that of the AJ. According to the Board, the ninety-day period was tolled starting on the day MPD was alerted about the incident, September 12, 2013. Without specifically addressing the time period from that date until October 1, 2013, when MPD referred the matter to the USAO, the Board stated that the ninety-day period was tolled because the allegations against Mr. Butler were the subject of a criminal investigation by the USAO. After determining that the

tolling stopped when the USAO issued its letter of declination on June 2, 2014, the Board concluded that MPD had timely issued the notice of termination within eighty-eight business days of the declination letter. The Board also upheld the AJ's authority to keep the record open after the remand order and before the initial decision, confirmed Mr. Butler's termination as the proper penalty, and declined to revisit the AJ's conclusions as to Mr. Butler's credibility.

Mr. Butler then sought review in Superior Court, which upheld the Board's ruling. On the timeliness issue, the Superior Court took yet a different approach. First, the Superior Court found that IAD had been criminally investigating Mr. Butler from the time it learned of his conduct on September 12, 2013. On this point, the Superior Court's reasoning was as follows: the September 18, 2013, letter to the USAO indicated that IAD viewed Mr. Butler's conduct as potentially criminal double-dipping; there was no evidence that IAD learned new and incriminating information about Mr. Butler's conduct between September 12, 2013, and September 18, 2013; it was therefore reasonable to infer that IAD viewed Mr. Butler's conduct as potentially criminal as of September 12, 2013.

The Superior Court also relied on an alternative rationale. According to the Superior Court, MPD was not on notice of Mr. Butler's unlawful accessing of

medical records -- the conduct that ultimately was the principal basis of the finding of misconduct -- until September 18, 2013. With respect to that conduct, the Superior Court reasoned, the ninety-day period did not start running until September 18, 2013, and the clock was tolled beginning on the same day by IAD's investigation into that potentially criminal conduct.

Either way, in the Superior Court's view, IAD's criminal investigation then tolled the ninety-day period until IAD referred the matter to the USAO. At that point, the USAO criminal investigation tolled the ninety-day period until the USAO's letter of declination on June 2, 2014. Based on these conclusions, the Superior Court determined that at most eighty-eight untolled business days had run at the time of the notice of termination, which therefore was timely.

On the merits, the Superior Court deferred to the AJ's credibility determinations and found that substantial evidence supported the finding that Mr. Butler made false statements during the IAD interview. Finally, the Superior Court concluded that the AJ was not required to explicitly reopen the record before remanding to MPD, and the AJ therefore permissibly considered additional evidence of other instances of misfeasance for penalty purposes before issuing the initial decision.

**II.**

When reviewing an OEA decision that has been reviewed by the Superior Court, "our scope of review is precisely the same as in administrative [cases] that come to us directly." *District of Columbia Fire & Med. Servs. Dep't v. District of Columbia Off. of Emp. Appeals*, 986 A.2d 419, 424 (D.C. 2010) (internal quotation marks omitted). We ordinarily defer to OEA's reasonable interpretation of statutes "under which [OEA] acts." *Id.* (internal quotation marks omitted). OEA's "decision must state findings of fact on each material contested factual issue; those findings must be supported by substantial evidence in the agency record; and the agency's conclusions of law must follow rationally from its findings." *Id.* (internal quotation marks omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). We also "examine the agency record to determine whether . . . OEA's action was arbitrary, capricious, or an abuse of discretion." *Id.* (brackets and internal quotation marks omitted).

**A.**

Turning first to the timeliness of the notice of termination, we conclude that this issue must be remanded for further consideration by OEA.

**1.**

We cannot sustain the AJ's analysis of the timeliness issue, because the AJ treated the ninety-day period as tolled until IAD issued its investigative report in September 2014. Under § 5-1031(b), however, tolling continues only as long as the matter is the subject of a criminal investigation, and it appears to be undisputed that any potential criminal investigation ended when the USAO declined prosecution on June 2, 2014.

**2.**

For different reasons, we also cannot uphold the OEA Board's analysis of the timeliness issue. The Board apparently assumed that the matter was under criminal investigation by the USAO for the entire period from September 12, 2013, to June 2, 2014. In fact, however, the matter was not referred to the USAO until October 1,

2013. It is undisputed that eighty-eight business days passed between June 2, 2014, when the criminal investigation ended, and October 6, 2014, when the notice of termination was issued. Unless much of the time from September 12, 2013, to October 1, 2013, is subject to tolling, the notice of termination was therefore untimely.

MPD argues that all of the time from September 12, 2013, to October 1, 2013, was tolled, because Mr. Butler's conduct was under criminal investigation by MPD during that period. That argument runs into a procedural obstacle: neither the AJ nor the OEA Board relied on that rationale. "Generally, an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained." *Apartment & Off. Bldg. Ass'n v. Pub. Serv. Comm'n*, 129 A.3d 925, 930 (D.C. 2016) (internal quotation marks omitted). There are exceptions to the general rule against affirming agency action on grounds that the agency did not rely upon and adequately explain. *E.g.*, *id.* (affirmance is permissible where remand would be futile because (a) it is clear agency would reach same result or (b) agency could permissibly reach only one conclusion). We conclude, however, that those exceptions do not apply in the present case.

The precise date on which Mr. Butler's conduct was first under criminal investigation by MPD may turn on unresolved matters of both law and fact. Section 5-1031(b) does not define the key phrase "subject of a criminal investigation." Our cases have not shed much light on the meaning of that phrase in the context of the beginning of a criminal investigation. *Cf. District of Columbia Fire & Med. Servs.*, 986 A.2d at 425 (stating that "[g]enerally an investigation is a comprehensive effort to clarify or better understand circumstances surrounding an incident or series of incidents").

MPD argues that conduct is under criminal investigation by MPD as soon as MPD (a) is aware of potentially criminal conduct and (b) has taken at least one concrete step to look into that conduct. Mr. Butler, however, appears to contend that in addition someone in MPD would have to subjectively view the investigation as potentially criminal rather than merely civil or disciplinary. We choose to leave to OEA in the first instance the question of how best to interpret the phrase "subject of a criminal investigation" in the current context. *See generally, e.g.*, *Brown v. District of Columbia Dep't of Emp't Servs.*, 83 A.3d 739, 751-52 (D.C. 2014) ("In accordance with our usual practice, we will not attempt to construe the statutory provisions before the agency charged with administering them has done so; we think it inadvisable for this court to attempt to review the issue on this record without a

clearer exposition by the agency of its statutory analysis in light of the facts of this case and the broader considerations presented by the issue.") (internal quotation marks omitted).

In MPD's view, the interpretation of "subject to a criminal investigation" is a pure issue of law as to which we owe no deference to OEA. As we have previously noted, however, this court generally defers to reasonable agency interpretations of ambiguous statutes under which the agency acts. *District of Columbia Fire & Med. Servs. Dep't*, 986 A.2d at 424-25. We have stated that principle not only as to OEA in general, but also more specifically in the context of OEA's interpretation of an earlier version of D.C. Code § 5-1031 itself. *Id.*

In arguing that we would owe no deference to OEA's interpretation of § 5-1031(b), MPD relies upon *District of Columbia v. District of Columbia Off. of Emp. Appeals*, 883 A.2d 124, 127 (D.C. 2005). It is true that the court in that case conducted de novo review in interpreting the phrase "conclusion of the criminal investigation" for purposes of a prior version of the time limit now found in § 5-1031. *Id.* at 126-28. The court, however, did not address the well-settled principle of administrative law generally requiring us to defer to reasonable agency interpretations of ambiguous statutes under which the agency acts. *Id.* Nor did the

court address our earlier cases applying that principle to OEA. *E.g.*, *Off. of District of Columbia Controller v. Frost*, 638 A.2d 657, 666 (D.C. 1994). We therefore do not interpret the decision in *District of Columbia v. District of Columbia Off. of Emp. Appeals* as sub silentio overturning the general principle that we will ordinarily defer to OEA's reasonable interpretation of statutes under which OEA acts. *See generally Thomas v. United States*, 731 A.2d 415, 420 n.6 (D.C. 1999) ("Where a division of this court fails to adhere to earlier controlling authority, we are required to follow the earlier decision rather than the later one."); *Murphy v. McCloud*, 650 A.2d 202, 205 (D.C. 1994) ("The rule of stare decisis is never properly invoked unless in the decision put forward as precedent the judicial mind has been applied to and passed upon the precise question.") (emphasis and internal quotation marks omitted).

There are circumstances in which deference to an agency's interpretation of a statute is not warranted. For example, we will not defer to an agency's interpretation of a statute of general applicability. *Off. of People's Couns. v. Pub. Serv. Comm'n*, 955 A.2d 169, 173 (D.C. 2008). Because MPD has not argued that § 5-1031 is a statute of general applicability, we have no occasion to address that issue. Relatedly, questions can arise about deference when multiple agencies play a role in administering a given statute. *See, e.g.*, *id.* (citing cases suggesting that no deference is owed); *New Life Evangelistic Ctr. v. Sebelius*, 753 F. Supp. 2d 103, 123 (D.D.C.

2010) (suggesting that in such circumstances deference may be owed to agency with "primary responsibility"). The Public Employee Relations Board (PERB) would review challenges to arbitral decisions involving disputes as to whether employee discipline against an MPD officer was timely under § 5-1031. *See generally District of Columbia Metro. Police Dep't v. District of Columbia Pub. Emp. Rels. Bd.*, 144 A.3d 14, 16 (D.C. 2016) (PERB reviews arbitral decision in case involving MPD officer's challenge to employee discipline). Thus, it is possible that both OEA and PERB could express views as to the meaning of § 5-1031. MPD has not argued in this case, however, that the court would owe deference to PERB's interpretation of § 5-1031. Given the arguments that have been made before us in this case, we decide the case on the premise that we would owe deference to OEA's reasonable interpretation of § 5-1031.

MPD contends that in any event its proposed interpretation of the phrase "subject of a criminal investigation" is the only reasonable one, and thus there is no need for this court to hear in the first instance from OEA. We disagree. As this case illustrates, IAD has multiple functions, investigating conduct sometimes for internal disciplinary reasons, sometimes for possible criminal prosecution, and sometimes for both purposes. Consider a case in which (a) MPD is informed of an allegation that an MPD officer was standing on a sidewalk holding an open container of

alcohol, in violation of D.C. Code § 25-1001(a)(1) (2012 Repl. & 2020 Supp.), and (b) MPD immediately determines not to pursue criminal charges against the officer and instead starts up a purely disciplinary investigation. We think it far from clear that the ninety-day limit would be tolled during such a disciplinary investigation.

Whether Mr. Butler's conduct was the subject of a criminal investigation by MPD during some or all of the period from September 12, 2013, to October 1, 2013, thus might turn on how OEA would reasonably interpret the phrase "subject of a criminal investigation." The answer to that question might also turn on factual and other issues that OEA has not addressed, including most notably at what precise point Sergeant Woodson determined that the matter had "criminal overtones." For the reasons we have explained, we leave these matters to be determined in the first instance by OEA.

**3.**

We also are unable to uphold the Superior Court's ruling. As previously explained, the Superior Court identified two rationales for finding that the notice of termination was timely. First, the Superior Court inferred as a matter of fact that IAD viewed Mr. Butler's conduct as potentially criminal as of September 12, 2013.

Drawing such factual inferences, however, was beyond the scope of the Superior Court's authority in reviewing an agency decision. *See, e.g.*, *Murchison v. District of Columbia Dep't of Pub. Works*, 813 A.2d 203, 206 (D.C. 2002) (per curiam) ("When an administrative body fails to make findings on material, contested issues of fact, a reviewing court cannot fill in the gap and make its own findings. Rather, the court must remand the case to the agency for it to make the necessary factual determinations."; remanding case to Superior Court so that Superior Court could remand to OEA for OEA to make factual findings).

Second, the Superior Court reasoned that MPD was not on notice of Mr. Butler's unlawful accessing of medical records -- the conduct that ultimately was the principal basis of the finding of misconduct -- until September 18, 2013. OEA, however, did not rest on that rationale. As reviewing courts, neither the Superior Court nor this court can ordinarily uphold OEA's decision on a rationale that OEA did not rely upon in making its decision. *Apartment & Off. Bldg. Ass'n*, 129 A.3d at 930.

**4.**

Although Mr. Butler agrees that the decision of the OEA cannot be affirmed, he appears to suggest that this court could reverse OEA's timeliness ruling outright, without remanding the matter. We disagree.

First, Mr. Butler argues that the AJ found as a matter of fact that the ninety-day limit was not tolled from September 12, 2013, to October 1, 2013; that reviewing courts are obliged to defer to that finding, which was adequately supported by the record; and that, given that factual finding, the notice of proposed termination was untimely. It is true that the AJ treated the ninety-day period as running from September 12, 2013, to October 1, 2013. The AJ, however, did not explain its reason for doing so and made no finding, factual or otherwise, as to whether Mr. Butler's conduct was under criminal investigation by MPD from September 12, 2013, to October 1, 2013. Remand is thus necessary for OEA to further address the timeliness issue.

Second, Mr. Butler contends that some of MPD's arguments in this court are foreclosed because MPD did not take a cross-appeal from the Superior Court's decision upholding Mr. Butler's termination. We do not agree. The Superior Court's judgment was entirely favorable to MPD. When judgment is rendered in a given party's favor, that party need not cross-appeal to argue for affirmance on a

theory that is not aligned with the trial court's reasoning; that party only needs to cross-appeal if it seeks to change the trial court's judgment. *See, e.g.*, *In re O.L.*, 584 A.2d 1230, 1232 n.6 (D.C. 1990) ("[T]he appellee may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court or an insistence upon matter overlooked or ignored by it.") (internal quotation marks omitted).

**B.**

For the foregoing reasons, we remand the case to OEA for further consideration of the timeliness question. Although the parties have briefed in this court a number of other issues related to the timeliness question, we conclude that those issues are better left to consideration if necessary on remand. *See generally, e.g.*, *District of Columbia Metro. Police Dep't v. Pinkard*, 801 A.2d 86, 90 (D.C. 2002) (declining to reach additional contentions when case was remanded to OEA for further review). We do, however, address two discrete remaining issues.

First, Mr. Butler disputes the AJ's finding that he lied to IAD about accessing medical records. We are not persuaded by Mr. Butler's argument on this point. The

AJ's finding was supported by substantial evidence, including that Ms. Jackson's medical records were open on Mr. Butler's computer for over fifty minutes. Although Mr. Butler continued to deny having actually reviewed Ms. Jackson's medical records, it was for the AJ to assess the credibility of that denial. *See, e.g.*, *Rocha-Guzmán v. District of Columbia Dep't of Emp't Servs.*, 170 A.3d 170, 175 (D.C. 2017) ("Credibility determinations are within the discretion of the [Administrative Law Judge (ALJ)], and typically are entitled to great weight due to the ALJ's unique ability to hear and observe witnesses first hand.") (internal quotation marks omitted); *Johnson v. District of Columbia Off. of Emp. Appeals*, 912 A.2d 1181, 1185 (D.C. 2006) ("[T]here can be substantial evidence on both sides of a dispute. If the administrative findings are supported by substantial evidence, we must accept them even if there is substantial evidence in the record to support contrary findings.") (internal quotation marks omitted).

Finally, Mr. Butler argues that OEA acted impermissibly by considering the information provided by MPD after the AJ remanded the matter to MPD. We see no error.

Mr. Butler relies on three OEA rules. First, 6-B DCMR § 629.1 (2020) provides that "When an evidentiary hearing has been provided, the record shall be

closed at the conclusion of the hearing, unless the Administrative Judge directs otherwise." Second, 6-B DCMR § 629.2 provides that "Once the record is closed, no additional evidence or argument shall be accepted into the record unless the Administrative Judge reopens the record pursuant to § 630.1." Finally, 6-B DCMR § 630.1 (2020) provides that "The Administrative Judge may reopen the record to receive further evidence or argument at any time prior to the issuance of the initial decision."

In Mr. Butler's view, these OEA rules precluded the AJ from considering the evidence provided by MPD on remand concerning an additional instance of misfeasance by Mr. Butler. The OEA Board concluded otherwise, reasoning that the AJ had the authority under OEA's rules to reopen the record before issuing its initial decision. We accord substantial deference to an agency's interpretation of its own regulations. *See, e.g.*, *District of Columbia Off. of Tax & Revenue v. BAE Sys. Enter. Sys., Inc.*, 56 A.3d 477, 481 (D.C. 2012) ("This court generally defers to an agency's interpretation of its own regulations unless that interpretation is plainly erroneous or inconsistent with the regulations.") (internal quotation marks omitted). We conclude that the OEA Board's analysis is reasonable. The AJ's remand order was not designated as an initial decision, and the AJ can reasonably be viewed as having implicitly reopened the record before issuing the order that was designated

as the initial decision.  We note, moreover, that Mr. Butler has not identified any concrete respect in which OEA's procedures unfairly prejudiced him, and he does not contest in this court the factual accuracy of the additional information provided by MPD on remand.

For the foregoing reasons, the judgment of the Superior Court is vacated and the case is remanded for the Superior Court to remand the case to the OEA for further proceedings.