**2348 AINGER PLACE TENANTS ASSOCIATION, INC.,** Appellant,

v.

**DISTRICT OF COLUMBIA, DTF Investments, LLC., and April House Tenants Association, Inc., Appellees.**

No. 07–CV–1357.

District of Columbia Court of Appeals.

Argued May 28, 2009.

Decided Oct. 8, 2009.

Meridith H. Moldenhauer, with whom Ashley E. Wiggins, Washington, DC, was on the brief, for appellant.

Carl J. Schifferle, Assistant Attorney General, with whom Peter J. Nickles, Acting Attorney General for the District of Columbia at the time the brief was filed, Todd S. Kim, Solicitor General, and Donna M. Murasky, Deputy Solicitor General, were on the brief, for appellee District of Columbia.

Shelli L. Calland with whom Jay T. Smith, Washington, DC, Robert Bunn and Rebecca Lindhurst were on the brief, for appellee April House Tenants Association, Inc., and DTF Investments, LLC.

Before WASHINGTON, Chief Judge, GLICKMAN, Associate Judge, and NEBEKER, Senior Judge.

WASHINGTON, Chief Judge:

This case involves two parties that submitted applications to the Condominium and Cooperative Conversion and Sales Branch ("CCCSB") for registration as a tenant organization under the Rental Housing Conversion and Sale Act of 1980 ("the Sale Act" or "the Act"). On appeal, appellant 2348 Ainger Place Tenants Association, Inc. ("Ainger Place") contends that the trial court erroneously concluded that Ainger Place lacked standing to bring a civil action to challenge the CCCSB's decision rejecting its application and registering appellee April House Tenants Association, Inc. ("April House") as a tenant organization with the right to negotiate the sales agreement with the owner.

■ We conclude that the trial court lacked jurisdiction to entertain Ainger Place's action, and thus, we affirm.[1]

## I.

Appellee DTF Investments owns a residential rental accommodation located at 2348 Ainger Place. On November 24, 2006, DTF submitted to the CCCSB an Offer of Sale & Tenant Opportunity to Purchase with a Third Party Contract for the subject property, pursuant to D.C.Code § 42–3404.02 (2001).

In December 2006, Ainger Place applied to the CCCSB to register as the tenant organization charged with representing the interests of the tenants residing at 2348 Ainger Place in that negotiation, as required by D.C.Code § 42–3404.11(1). On December 19, 2006, the CCCSB notified Ainger Place that it would not approve its application because it was incomplete. Shortly thereafter, on December 29, 2006, April House applied to the agency to be registered as the representative tenant organization. On January 8, 2007, Ainger Place resubmitted its application. In March 2007, the CCCSB granted April House's application, registering it as the tenant's sole representative.

Ainger Place challenged the CCCSB's determination in a petition for reconsideration. In a letter, dated April 13, 2007, the CCCSB denied Ainger Place's petition without a hearing. The letter was written by the CCCSB housing regulations officer charged with reviewing Ainger Place's challenge to the CCCSB's determination that April House was the legitimate tenant representative. In that letter, the CCCSB directly stated that, if appellant wished to challenge the CCCSB's determination, "[it] may either file suit in the Superior Court of the District of Columbia pursuant to section 42–3405.03 of the [Sale Act], or petition for declaratory relief under section 42–3405.03a."

On June 22, 2007, Ainger Place filed a complaint in the Superior Court against the Mayor, April House, and DTF, to challenge the District's rejection of its application for registration and its decision to register April House as the tenant organization. Ainger Place predicated the Superior Court's jurisdiction to hear its challenge solely on § 42–3405.03, which permits "an aggrieved owner, tenant, or tenant organization" to seek "through a civil action in law or equity" enforcement of any right or provision under the respective chapter of the Sale Act. *See* § 42–3405.03.

After hearing arguments challenging Ainger Place's standing to bring suit, the trial court determined that Ainger Place lacked standing because it was not registered with the CCCSB and had not exhausted its administrative remedies under the Act. Consequently, the trial court dismissed the complaint with prejudice.

On appeal, Ainger Place contends that it has standing because it meets the defini-

---

1. While the Superior Court's lack of jurisdiction over the merits of appellant's case divests this court of jurisdiction to address the merits, *see, e.g., District of Columbia v. Douglass,* 452 A.2d 329 (D.C.1982) (holding that, because the Superior Court lacked jurisdiction to review the merits of agency action, we also lacked jurisdiction and must dismiss), by statute we retain authority to review "all final orders and judgments of the Superior Court[.]" D.C.Code § 11–721(a)(1) (1981). Thus, we retain jurisdiction to determine whether the trial court's dismissal was appropriate. *See, e.g., Fair Care Found. v. District of Columbia Dep't of Ins. & Sec. Regulation,* 716 A.2d 987, 997–98 (D.C.1998) (discussing the nature of claims raised in Superior Court to establish that, regardless of how skillfully articulated, claims constituted a challenge to an agency decision, which the trial court lacked jurisdiction to hear).

tion of "tenant organization" under § 42–3401.18. Ainger Place also asserts that, according to § 42–3405.03(b), it is not compelled to exhaust its administrative remedies before bringing civil suit. While appellees asserted in their respective briefs that the trial court was correct in concluding that Ainger Place lacked standing to challenge the CCCSB's decision, at oral arguments, appellees also argued that the trial court lacked jurisdiction to consider Ainger Place's claims after this court raised the matter *sua sponte.*

## II.

■ Where the District of Columbia Administrative Procedure Act vests exclusive jurisdiction in this court over review of administrative actions, the Superior Court may not maintain concurrent jurisdiction. *See Fair Care Found., supra,* note 1, 716 A.2d at 997 (citing D.C.Code § 1–1510(a) (1981), recodified at § 2–510 (2001)) (affirming Superior Court's dismissal for lack of jurisdiction where Code provides exclusive jurisdiction to Court of Appeals); *see also Douglass, supra,* note 1, 452 A.2d at 329 (D.C.1982) (holding that "§ 1–1510 provide[d] for exclusive appellate review of administrative action . . . thereby preclud[ing] concurrent jurisdiction in the Superior Court."). "Any Superior Court action that 'constitutes a challenge' to a previous agency action, therefore, would be brought in the wrong court." *Fair Care Found., supra,* note 1, 716 A.2d at 997 (citing *Douglass,* 452 A.2d

at 332–33). Accordingly, whether the Superior Court had jurisdiction over an action is a question we review *de novo. Davis & Assocs. v. Williams,* 892 A.2d 1144, 1148 (D.C.2006); *Martin v. District of Columbia Courts,* 753 A.2d 987, 991 (D.C.2000). In this matter, should we find that the trial court lacks jurisdiction, we must affirm the trial court's dismissal of the case. *See, e.g., Fair Care Found., supra,* note 1, 716 A.2d at 997 (affirming Superior Court's dismissal for lack of jurisdiction to review agency decision).

■ In order for tenants in a rental housing accommodation with five or more units to make a contract of sale with an owner, the Act requires the tenants to file an application with the Mayor once they have formed a bona fide tenant organization.[2] *See* D.C.Code § 42–3404.11. The Act further provides that, if the CCCSB rejects the application for any reason, the applicant has twenty days to petition for reconsideration, and "upon proper showing of reasonable grounds," the applicant is entitled to an administrative hearing to contest the rejection. § 42–3405.04. Should the twenty-day period lapse, or should a Mayor hearing officer adopt the initial decision, the decision becomes final. *See* §§ 42–3405.04, –3405.09. Finally, and most importantly to the resolution of this case, the Act provides that, within fifteen days of the final decision, any party to the proceeding may seek judicial review "*by filing a petition for review in the District*

---

**2.** The Sale Act defines "tenant organization" as

> an organization that represents at least a majority of the heads of household in the housing accommodation excluding those households in which no member has resided in the housing accommodation for at least 90 days and those households in which any member has been an employee of the owner during the preceding 120 days.

§ 42–3401.03(18).

Only an applicant that satisfies this definition, and completes the steps delineated in § 42–3404.11(1), may be registered by the Mayor as the tenant organization representing the tenants' collective rights under the Act in their pursuit of purchasing rental housing of five units or more. *See* § 42–3404.11(1); *cf. also* 14 DCMR 4715.6 ("Only a tenant organization may reject an offer of sale . . .[.]").

*of Columbia Court of Appeals."* § 42–3405.09(a) (emphasis added). The Act expressly mandates that such "[p]roceedings for judicial review of Mayoral actions shall be subject to and be in accordance with § 2–510." § 42–3405.09(b). In relevant part, D.C.Code § 2–510(a) states:

> Any person suffering a legal wrong, or adversely affected or aggrieved, by an order or decision of the Mayor or an agency in a contested case, is entitled to a judicial review . . . upon filing in the District of Columbia Court of Appeals a written petition for review.

Hence, review of any final decision under this chapter of the Act stands within the jurisdiction of this court alone, regardless of whether the challenging party seeks review of the CCCSB's decision to grant, or to deny, an application for registration. *See, e.g., Fair Care Found., supra,* note 1, 716 A.2d at 997–98 ("Under the statutory mandate, this court is the proper resort for those 'suffering a legal wrong, or adversely affected or aggrieved' by an agency's decision"). Accordingly, the Superior Court lacks jurisdiction to review challenges to Mayoral actions regarding the registration of tenant organizations under the Sale Act as jurisdiction over such challenges resides exclusively in this court. Accordingly, the jurisdiction to review challenges to Mayoral actions regarding the registration of tenant organizations under the Sale Act resides in this court, not in the Superior Court.

■■ Here, Ainger Place contends that it was not seeking judicial review of the CCCSB's decision when it brought a civil action against the Mayor challenging his decision not to register Ainger Place as a tenant organization. Rather, Ainger Place asserts that it was exercising what it considered a right to bring an original action under § 42–3405.03 of the Act based on the April 13, 2007 letter Ainger Place received from the CCCSB in response to its petition for reconsideration. While we acknowledge that the letter was inaccurate as to the options available to Ainger Place after the CCCSB rejected its application, jurisdiction cannot be conferred upon the court by an agency's mistake, and we cannot ignore that judicial review of the agency's decision was at the heart of the proceeding brought before the trial court. Ainger Place applied to the CCCSB to be registered by the Mayor as the rightful tenant organization to negotiate with the owner for the purchase of the subject property. Upon rejection of its application and subsequent petition of reconsideration,[3] Ainger Place applied for reconsidera-

---

3. Ainger Place argues that, because the CCCSB declined to give it a trial-type hearing on its petition for reconsideration, it was entitled to seek such a hearing before the Superior Court as an original action. We disagree.

In this case, the CCCSB rejected Ainger Place's contention that April House did not represent a majority of the tenants because seven of the tenants who signed April House's application had previously signed an application supporting Ainger Place as the tenant organization. The CCCSB determined that there was no statutory support for Ainger Place's contention that, by signing on to Ainger Place's initial application, the tenants had forever "assigned their rights" to Ainger Place. Because the CCCSB's decision denying Ainger Place's petition for reconsideration was based on a matter of statutory interpretation, this court could certainly have reviewed that decision on appeal directly from the agency. *See* §§ 42–3405.04, –3405.09. Moreover, even had this been a case where a trial-type hearing should have been held, this court is capable of making such a determination and providing appropriate relief to the litigants under those circumstances. *See, e.g., Jimenez v. District of Columbia Dep't. of Employment Servs.,* 701 A.2d 837 (D.C.1997) (remanding for further fact finding to permit court to perform appellate review). For these reasons, Ainger Place's argument that it was entitled to file an original action in the Superior Court, because it was denied a hearing before the CCCSB, is without merit.

tion before bringing civil suit in Superior Court. In its complaint, Ainger Place alleged that it satisfied all aspects of the tenant organization requirements under the Act, and that it, *not* April House, qualifies as the sole representative of the tenants and should have been registered as such. This is a quintessential challenge to the administrative decision of the Mayor under the Act and, by statute, only this court has jurisdiction to review challenges to Mayoral actions made pursuant to the Sale Act. § 42–3405.09 (directing parties seeking judicial review to file petitions to the District of Columbia Court of Appeals); *see* D.C.Code § 2–510(a); *Fair Care Found., supra,* note 1, 716 A.2d at 997 (affirming trial court's dismissal for lack of jurisdiction where, despite appellant's contention that "the common law claims invoked grounds distinct from the Agency action to challenge the proposed business combination," the suit's main concern was "to enjoin and prevent consummation of the business combination").

Because Ainger Place's appeal from the CCCSB decision in this case should have been appealed to this court, the trial court was without jurisdiction to entertain Ainger Place's claims. *See Fair Care Found., supra,* note 1, 716 A.2d at 997–98. Thus, we affirm the trial court's dismissal of Ainger Place's case, albeit on other grounds.

### III.

For the foregoing reasons, the dismissal of the case is hereby

*Affirmed.*