EUCLID STREET, LLC, Appellant,

v.

DISTRICT OF COLUMBIA WATER
AND SEWER AUTHORITY,
Appellee.

No. 09–CV–894.

District of Columbia Court of Appeals.

Argued May 26, 2010.

Decided April 12, 2012.

Peter T. Enslein, Bethesda, MD,with whom Patrick S. Guilfoyle was on the brief, for appellant.

Nat N. Polito, Washington, DC, with whom Avis M. Russell was on the brief, for appellee.

Before BLACKBURNE–RIGSBY, Associate Judge, RUIZ, Associate Judge, Retired,* and NEBEKER, Senior Judge.

RUIZ, Associate Judge, Retired:

Euclid Street, L.L.C. ("Euclid Street") appeals the dismissal of its complaint against the District of Columbia Water and Sewer Authority ("WASA") seeking declaratory and injunctive relief. The issue presented in this case is whether WASA has the authority to hold the owner of a building responsible for paying a tenant's delinquent water services account. Because the applicable statute and regulations establish that the obligation to satisfy outstanding water service fees runs with the property where the water was consumed, we conclude that WASA is permitted to bill the owner of a building if a tenant consumes water, is billed appropriately, but fails to pay. We, therefore, affirm the dismissal of appellant's complaint.

## I. Facts

Euclid Street owns a multi-unit apartment building located at 1460 Euclid Street, N.W. On March 8, 2000, Euclid Street requested WASA's permission to install water meters in each apartment so that each tenant living in the building would be billed directly for their water and sewer use.[1] WASA agreed and began to bill tenants directly based on readings from water meters that Euclid Street installed in each apartment.

After several tenants failed to pay their water bills in full, WASA notified Euclid Street that there were delinquent accounts in the building and that Euclid Street would be held liable for the overdue amounts. Euclid Street refused to pay, arguing that its obligation to WASA had ended once WASA agreed to the individual metering and had billed the tenants directly for the water that was provided to each apartment. After WASA filed a lien with the Recorder of Deeds against the property pursuant to D.C.Code § 34–2407.02 (2001), Euclid Street filed a complaint in Superior Court alleging that it had no

---

* Judge Ruiz was an Associate Judge of the court at the time of argument. Her status changed to Associate Judge, Retired, on September 1, 2011.

1. At oral argument, Euclid Street's counsel stated that as of March 2000 Euclid Street was delinquent in paying its own water service fees to WASA, which had filed a lien against 1460 Euclid Street.

obligation to satisfy the tenants' delinquent accounts and that the lien exceeded WASA's statutory authority and violated the Due Process and Takings Clauses of the Constitution and 42 U.S.C. § 1983. The Superior Court (Judge Retchin) dismissed Euclid Street's complaint for failure to exhaust administrative remedies before WASA. Not long afterwards, Euclid Street and WASA filed a praecipe in which Euclid Street agreed to dismiss its pending appeal of the Superior Court's dismissal of the complaint, and to pay the tenants' outstanding water service fees. In exchange, WASA agreed to remove all liens against 1460 Euclid Street.

Euclid Street's tenants, however, continued to fall into arrears with their water bills. WASA again attempted to collect the overdue amounts from Euclid Street, and Euclid Street again refused to pay. WASA filed another lien against 1460 Euclid Street. This time (perhaps because of the court's prior direction to exhaust administrative remedies), Euclid Street filed an administrative hearing petition with WASA. Euclid Street's petition listed the issues to be considered as follows:

1. Whether Euclid Street is liable to WASA for the delinquent WASA accounts of the tenants.

2. Whether WASA is equitably estopped from maintaining or placing liens on 1460 Euclid Street because of delinquent tenant accounts.

3. Whether new tenants are liable to WASA for the delinquent accounts of former tenants.

4. Whether WASA must remove all liens it has recorded against [1]460 Euclid Street because of delinquent tenant accounts.

5. Whether WASA is prohibited from recording any future liens against 1460 Euclid Street because of delinquent tenant accounts.

6. Whether WASA's policy of placing and maintaining liens on [1]460 Euclid Street because of delinquent tenant accounts violates the Due Process Clause of the Constitution.

7. Whether WASA's conduct of placing and maintaining liens on [1]460 Euclid Street because of delinquent tenant accounts violates the Takings Clause of the Constitution.

The petition did not specify what form of relief Euclid Street was requesting and did not designate which water bills Euclid Street contested. Following a brief hearing, which did not include the presentation of any evidence, the Hearing Officer dismissed Euclid Street's petition by written order. In the order of dismissal, the Hearing Officer explained:

It is clear that neither party to the hearing was able to identify the specific bill or bills that the customer believed were inaccurate, since that is not why this customer was seeking a hearing. . . . [T]his hearing was not about the accuracy of the bills, but rather about the method that WASA chose to try to collect unpaid bills.

After analyzing the regulations that establish the procedures for contesting a water bill, set forth in Chapter 4 of Title 21 to the Code of D.C. Municipal Regulations, the Hearing Officer concluded that "[t]he issues raised by the customer in this case are well beyond the limitations for the hearings, and beyond [the Hearing Officer's] authority to address."

On September 19, 2008, Euclid Street filed a second complaint in Superior Court, for declaratory and injunctive relief, again asserting that it is not legally responsible for its tenants' delinquent WASA accounts. Euclid Street requested that the Superior Court: (1) declare that it is not liable to WASA for overdue tenant accounts and

that WASA has no authority to file, and is equitably estopped from filing, a lien against 1460 Euclid Street based on tenants' delinquent accounts; (2) enjoin WASA from attempting to collect any amounts from Euclid Street that relate to tenant accounts and from filing any liens against 1460 Euclid Street; (3) order WASA to remove all existing liens filed on 1460 Euclid Street; and (4) declare that WASA's conduct violates the Due Process and Takings Clauses of the Constitution. WASA filed a motion to dismiss under Super. Ct. Civ. R. 12(b)(6) on the basis that WASA's actions were clearly authorized by statute.

The trial court (Judge Holeman) granted WASA's motion to dismiss, concluding that the relevant statute, D.C.Code § 34–2407.02, is "clear and unambiguous" that WASA may bill the owner of record for a tenant's delinquent water fees and that WASA may file a continuing lien against the owner's property if it also fails to pay the tenants' outstanding bills. Euclid Street filed a timely appeal. We affirm.

## II. Jurisdiction

■ As a threshold issue, we consider WASA's argument that the Superior Court did not have jurisdiction to consider Euclid Street's claims because Euclid Street was required by statute to timely appeal the WASA Hearing Officer's decision directly to this court.[2] We conclude that because this case did not arise from a "contested case" over which this court has exclusive jurisdiction, the complaint was properly filed in Superior Court.

■ The District of Columbia Administrative Procedure Act ("APA") provides that "[a]ny person suffering a legal wrong, or adversely affected or aggrieved, by an order or decision of the Mayor or an agency *in a contested case,* is entitled to a judicial review thereof in accordance with this subchapter upon filing in the District of Columbia Court of Appeals a written petition for review." D.C.Code § 2–510(a) (2001) (emphasis added); *see also* D.C.Code § 2–509 (discussing the procedures for adjudicating a "contested case").[3] It is well established that the APA vests this court with exclusive jurisdiction to review an agency's decision regarding a "contested case." *See, e.g., 2348 Ainger Place Tenants Ass'n, Inc. v. District of Columbia,* 982 A.2d 305, 308 (D.C.2009) ("Where the District of Columbia Administrative Procedure Act vests exclusive jurisdiction in this court over review of administrative actions, the Superior Court may not maintain concurrent jurisdiction."). Thus, a "Superior Court action that constitutes a challenge to a previous agency action ... would be brought in the wrong court." *Id.* (quoting *Fair Care Found. v.*

---

2. WASA did not raise a jurisdictional objection before the trial judge. However, the court's lack of subject-matter jurisdiction cannot be waived. *See* Super. Ct. Civ. R. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the Court lacks jurisdiction of the subject matter, the Court shall dismiss the action."); *see also Slater v. Biehl,* 793 A.2d 1268, 1271 (D.C.2002) ("Challenges to a court's subject matter jurisdiction cannot be waived." (quoting *Arrington v. United States,* 585 A.2d 1342, 1344 n. 2 (D.C.1991))).

3. WASA is not a department of the Mayor's office or an agency. *See* D.C.Code § 34–

2202.02(a) (2001) (noting that WASA is an independent authority of the District government, "a corporate body, created to effectuate certain public purposes, that has a separate legal existence within the District government."). However, WASA is subject to "all laws" that are applicable to agencies in the District, which would include the APA. D.C.Code § 34–2202.02(a), (b). In addition, the owner or occupant of a property who wishes to contest a water or sewer service bill is specifically authorized to do so "in accordance with" the procedures set forth in the APA. D.C.Code § 34–2305.

*District of Columbia Dep't of Ins. and Sec. Regulation,* 716 A.2d 987, 997 (D.C.1998)).

■ Only certain types of administrative proceedings are governed by the procedural requirements of a "contested case," however. The APA defines a "contested case" as "a proceeding before the Mayor or any agency in which the legal rights, duties, or privileges of specific parties are required by any law . . . or by constitutional right, to be determined after a hearing before the Mayor or before an agency." D.C.Code § 2–502(8). We have held that the phrase "contested case" refers to a "trial-type hearing" that is "adjudicatory" and "is concerned basically with weighing particular information and arriving at a decision directed at the rights of specific parties." *Dupont Circle Citizen's Ass'n v. District of Columbia Zoning Comm'n,* 343 A.2d 296, 299 (D.C.1975) (en banc); *accord Timus v. District of Columbia Dep't of Human Rights,* 633 A.2d 751, 756 (D.C.1993) (en banc). In contrast, if an agency "is acting in a legislative capacity, making policy decisions directed toward the general public," then administrative proceedings are not governed by the "contested case" requirements of the APA. *Dupont Circle Citizen's Ass'n,* 343 A.2d at 299. Although we have "recognize[d] . . . that the distinction between legislative and adjudicative proceedings is not always precise," *id.* at 300, we have adopted the "factual distinction" that:

> Adjudicative facts are the facts about the parties and their activities, businesses, and properties. Adjudicative facts usually answer the questions of who did what, where, when, how, why, with what motive or intent; adjudicative facts are roughly the kind of facts that go to a jury in a jury case. Legislative facts do not usually concern the immedi-

ate parties but are general facts which help the tribunal decide questions of law and policy and discretion.

*Id.* (quoting 1 K. Davis, *Administrative Law* § 7.02 at 413 (1958)); *accord Citizens Ass'n of Georgetown, Inc. v. Washington,* 291 A.2d 699, 704 & n. 14 (D.C.1972).

The procedures that allow WASA's customers to "contest any water bill," 21 DCMR § 400.1, in an administrative proceeding would, in most instances, involve a determination of "adjudicative facts." *See generally King v. District of Columbia Water and Sewer Auth.,* 803 A.2d 966 (D.C.2002) (considering an appeal from a WASA Hearing Officer's order dismissing customer protest of four water bills). WASA's regulations specifically provide that "contest[ed]" bills may be challenged at a hearing, the purpose of which "is to provide the petitioner with an opportunity to appeal . . . [t]he validity of any water . . . service charge." 21 DCMR § 410.1(a). A Hearing Officer has broad powers to preside over a hearing and may issue subpoenas, take testimony, grant requests for discovery, hold settlement conferences, request additional investigative reports by WASA, and rule on motions. 21 DCMR § 414.4. WASA is also vested with the authority to "investigate" a challenged bill by verifying computations and meter readings and conducting an on-site inspection of the premises and the water meter, among other powers. 21 DCMR § 403.2.

Here, however, the petition that Euclid Street filed with WASA was not the usual challenge to the particulars of a water bill, and the proceeding before the Hearing Examiner did not address the "who . . . what, where, when, how, [or] why" of a specific bill and lacked the most basic hallmarks of a "contested case" as it did not involve the presentation and consideration

of evidence.[4] Rather than focusing on "adjudicative facts," Euclid Street's petition to WASA focused on "questions of law and policy," *Dupont Circle Citizen's Ass'n,* 343 A.2d at 300, such as: "[w]hether new tenants are liable to WASA for the delinquent accounts of former tenants," "[w]hether Euclid Street is liable to WASA for the delinquent WASA accounts of the tenants," and "[w]hether WASA's policy of placing and maintaining liens on [1]460 Euclid Street ... violates the Due Process Clause of the Constitution ... [and] the Takings Clause of the Constitution." Indeed, the WASA Hearing Officer concluded that she did not have authority to review Euclid Street's petition in part because "it was clear that neither party [at the hearing] ... was able to identify the specific bill or bills that the customer believed were inaccurate." Nor, apparently, did Euclid Street identify "which bills were being disputed, and were therefore subject to the hearing." Thus, as the Hearing Officer explained, "[a]fter more than an hour of testimony, it became clear that this hearing was not about the accuracy of the bills, but rather about the method that WASA chose to try to collect unpaid

bills."[5] We similarly conclude that although the hearing before WASA pertained to a specific property—1460 Euclid Street—the issues articulated by counsel were legal in nature and did not require an evidentiary hearing to determine disputed facts. *See Citizens Ass'n of Georgetown, Inc.,* 291 A.2d at 705 (holding that a hearing by the District's Zoning Commission was not "adjudicative" in part because "[i]t is difficult to conceive that factual findings would be required on the particular status of specific individuals"). Indeed, Euclid Street's request appears to have been, for all practical purposes, a request for a declaratory order under D.C.Code § 2-508,[6] and we are barred by the APA from directly reviewing an agency's refusal to issue such an order. *Id.* WASA does not dispute that the Hearing Officer properly determined she was not authorized to entertain a petition asking for such relief.

As the administrative hearing petition did not involve a contested case, Euclid Street's appeal was properly brought before the Superior Court, and need not have been filed first with WASA.[7]

4. As Euclid Street asserts on appeal: "This case has nothing to do with determining whether WASA's bills accurately reflect the amount of water a tenant used but failed to pay for. Rather, this action seeks a declaratory judgment that Euclid Street cannot be compelled to pay its tenants' water charges. The dollar amount of the charges is not at issue."

5. The Hearing Officer concluded that because WASA's "administrative hearing itself is described as having the purpose to provide the customer with the opportunity to appeal the decision of the 'validity' of a bill," *see* 21 DCMR § 410, Euclid Street's petition did not fall within the scope of WASA's statutorily prescribed authority.

6. *See Office of the People's Counsel v. Pub. Serv. Comm'n of District of Columbia,* 955 A.2d 169, 175 (D.C.2008) (holding that a fil-

ing that "sought both a broad ruling as to what treatment could be afforded to utilities' jurisdictional revenue information in the future ... and an opinion about whether the Commission was required to publish such revenue information" was properly construed by the Public Service Commission as a request for a declaratory order).

7. WASA argues that Euclid Street's complaint in Superior Court "raises issues not addressed in the administrative hearing" and that therefore Euclid Street did not exhaust its administrative remedies. Euclid Street's petition to WASA and its complaint filed in Superior Court list nearly identical claims, however, and it is clear that the Hearing Officer was given the opportunity to address all of the issues that were subsequently raised in Superior Court. As discussed in the text, the issues raised by Euclid Street fell outside the Hearing Examiner's competence.

### III. Standard of Review

In reviewing the trial court's dismissal of the complaint under Rule 12(b)(6), we apply the same standard used by the trial judge. *See, e.g., Schiff v. American Ass'n of Retired Persons*, 697 A.2d 1193, 1196 (D.C.1997). We "construe the complaint in a light most favorable to the plaintiff, while assuming the facts alleged in the complaint as true." *Id.* A claim should be dismissed under Rule 12(b)(6) only where "it appears, beyond doubt, that the plaintiff can prove no facts which would support the claim." *Id.*

Although we would ordinarily give deference to WASA's reasonable interpretation of the statute it is charged with implementing and its regulations, the WASA Hearing Officer declined to opine on the legal and statutory issues presented here. WASA does not dispute the Hearing Officer's conclusions with respect to the scope of her authority, or argue that the matter should be remanded to WASA for further consideration. Thus, our review of the relevant statute and regulations is de novo.[8] *See, e.g., In re G.K.*, 993 A.2d 558, 563 (D.C.2010).

### IV. WASA's Authority to Bill Euclid Street for Delinquent Tenant Accounts and File a Lien Against Euclid Street's Real Property

Euclid Street's appeal requires us to decide two closely related issues, namely, whether WASA is authorized to: (1) bill a building owner directly for water services after a tenant who was authorized by WASA for direct billing has failed to pay water service fees; and (2) file a lien against the property where the water services were rendered if the owner fails to pay the fees that have been billed to the owner as a result of the tenant's delinquence. Our affirmative answer to the first question leads to a similarly affirmative answer to the second question.

The parties agree, as do we, that the principal statute at issue is D.C.Code § 34–2407.02, which provides:

> [I]f an owner of real property fails to pay District water and sanitary sewer service charges in full accordance with § 34–2407.01, *for all bills rendered* which remain unsatisfied for 60 days or more the Mayor may file a certificate of delinquency with the Recorder of Deeds.
>
> . . .
>
> Upon filing, the certificate of delinquency shall constitute a continuing lien against the real property. . . .

D.C.Code § 34–2407.02(a)(1)–(2) (2001) (emphasis added). WASA (and the trial court) relied on this statute as authority for the validity of the lien WASA filed on the property at 1460 Euclid Street. Euclid Street responds, however, that WASA cannot hold an owner responsible for a tenant's overdue account once WASA has agreed to collect from the tenant directly. In support, Euclid Street cites WASA's regulations that create a tenant's right to receive water bills in his or her own name.

---

**8.** WASA asserts that we should give deference to the interpretation of the relevant statutes and regulations that it has argued in its pleadings and briefs in the course of this litigation. However, courts "have declined to give deference to an agency counsel's interpretation of a statute where the agency itself has articulated no position on the question." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988); *accord Comm. of 100 on the Fed. City v. District of Columbia Dep't of Consumer and Regulatory Affairs*, 571 A.2d 195, 205 (D.C.1990); *see also Coumaris v. District of Columbia Alcoholic Beverage Control Bd.*, 660 A.2d 896, 899 (D.C.1995) ("No deference is appropriate . . . where the agency has failed to identify the question of statutory construction to be addressed.").

We disagree with Euclid Street, and conclude that the relevant statutes and regulations, taken together, establish that the obligation to pay WASA's water service charges runs with the property where the water services are rendered. Therefore, WASA was authorized to bill the owner of the property, Euclid Street, for the delinquent tenant accounts, and had the further right to file a lien against the 1460 Euclid Street property after its owner refused to pay.

### A.

We begin our analysis with an overview of the regulatory framework that gives WASA the authority to bill a tenant directly for water services and describes the consequences of a tenant's failure to pay for those services. Pursuant to 21 DCMR § 428.1 (2010), WASA is authorized to "permit tenant(s) to receive the bills in their own name" when the owner of the property has failed to pay its own account in full and WASA determines that it is "practicable" to bill the tenant directly. WASA's "practicability" determination requires a finding that it is feasible to install a meter in each unit in an apartment building or, if that is not feasible, that there is a tenant group or association able to assume responsibility for paying the building's water service fees. *See* 21 DCMR § 430. Thereafter, "WASA will read the meter on service at the affected address and render a final bill to the owner . . . ." 21 DCMR § 428.3. Once WASA begins to bill the tenants directly, "[i]f water and sewer charges incurred by the tenant(s) remain unpaid for more than thirty (30) days after the rendering of a bill for the charges, penalties *and* interest shall be applied to the tenant's outstanding charges, and water and sewer services may be terminated." 21 DCMR § 428.4. "[S]ervices shall not be restored until all charges, penalties,

interest and fees for the property are paid in full." 21 DCMR § 428.6.

21 DCMR § 432, titled "Tenant Payment of Water and Sewer Service Bill," sets forth the procedures that WASA must follow when a tenant or a tenant association fails to pay WASA's water service fees. Section 432 states in full:

432.1 The General Manager may terminate water and sewer service to the premises of a tenant who has agreed to accept responsibility for payment of water and sewer services charges individually or with a tenant association when the tenant or the tenant group or association is delinquent in payment.

432.2 The rights of the tenant group or association shall terminate upon the occurrence of any of the following:

(a) The failure to make timely payments;

(b) The failure of the tenant group or association to maintain bonding;

(c) The failure of the tenant group or association to keep adequate records; or

(d) The failure of the tenant group or association to obtain the consent of all the premises' tenants, including the consent of all tenants who move into the premises after the account is established.

432.3 *Upon termination of the tenant group or association's account, WASA shall bill the owner of the property directly for water and sewer charges.*

21 DCMR § 432 (emphasis added).

The statute that governs the District's water assessments and rates does not discuss procedures for metering apartment units individually or billing tenants directly. However, the statute does state that WASA may terminate water service if the "owner or occupant" of a building or apartment fails to pay a water bill within thirty

days. D.C.Code § 34–2407.01 provides, in relevant part:

> The Mayor of the District of Columbia is authorized to provide for the collection of water charges, in advance or otherwise, *from the owner or occupant of any building*, establishment, or other place furnished water or water service by the District, and to shut off the water supply to any such building, establishment, or other place upon failure *of the owner or occupant thereof* to pay such water charges within 30 days from the date of rendition of the bill therefor. Such authority to shut off the water supply may be exercised by the Mayor *regardless of any change in ownership or occupancy of such building, establishment, or other place.*

D.C.Code § 34–2407.01(a) (2001) (emphasis added). As discussed above, the statute further provides that, in addition to shutting off service, as part of the authority "to provide for the collection of water charges ... from the owner or occupant," WASA may file a "continuing lien" against a property after the "owner" has been sixty days delinquent in paying "for all bills rendered." *See* D.C.Code § 34–2407.02(a)(1)–(2).

## B.

■ We think the language of the statute and regulations, read together, establish that although WASA provides some accommodation for direct billing of tenants, the obligation to pay fees owed to WASA reside with the owner of the property to which services are provided. In essence, the obligation to pay runs with (and can be secured by a lien on) the property where the water services were rendered. Therefore, the property owner's obligation to WASA is not terminated because the tenants receive bills in their own name. This conclusion is supported by statutory language. For example, D.C.Code § 34–2407.01(a) states that WASA's "authority to shut off the water supply [for failure to pay] may be exercised ... *regardless of any change in ownership or occupancy of such building*, establishment, or other place," and D.C.Code § 34–2407.02(a)(2) provides that the filing of a certificate of delinquency "shall constitute a *continuing lien* against the real property."

Euclid Street relies on 21 DCMR § 429.2, which refers to a tenant's assumption of "*prospective* financial responsibility," and 21 DCMR § 428.3, which states that WASA shall render a "final bill" upon the owner after WASA has agreed to bill the tenants directly, in support of its argument that the responsibility of the owner of an apartment building ceases with respect to tenants' outstanding water and service fees once they have been directly billed to the tenants. Although the language selected by Euclid Street from these regulations provides some support for its position, it does not persuade us, when examined as a whole, it is best interpreted as setting out the mechanics for transferring to a direct billing of tenants. A broader construction would not be consistent with the governing statute's focus on the owner of the property where water services are rendered, not the individual tenant who receives the bill, and the remedies for payment. Significantly, the regulations appear to allow tenants to arrange for direct billing in their own name primarily as a means of ensuring a continuous water supply when the landlord has previously been delinquent in paying WASA's fees. *See* 21 DCMR §§ 428.1, 430.1. But rather than removing the owner's responsibility for paying for water services to the property, as Euclid Street would have us conclude, the regulations set forth procedures for tenant billing that are properly understood as a complement to the own-

er's ultimate obligation to pay for the water services. Thus, 21 DCMR § 428.6, which discusses termination of water services for failure to pay, provides that water service "shall not be restored until all charges ... *for the property* are paid in full." (emphasis added). Likewise, 21 DCMR § 432.3 states that WASA "shall bill the owner of the property directly" when a tenant association's account is terminated due to delinquency; implicitly, the same procedure should follow when an individual tenant's account is terminated due to delinquency. 21 DCMR § 427.1, which describes WASA's procedures for enforcing a real property lien, states that when "bills" for water and sewer services are more than sixty days overdue, WASA "shall provide the owner of record with a written notice of intent to file a lien." Importantly, § 427 does not specify that the "bills" must be in the name of the owner, instead of the tenant.[9]

If, as Euclid Street argues, WASA could collect water and sewer fees only from a tenant (once it has agreed to direct billing), then when the tenant fails to pay, WASA would be left with two extreme options: shut off the service entirely pursuant to D.C.Code § 34–2407.01(a), or hold an unsecured debt that would require initiation of a collection action against the tenant. This result would be at odds with D.C.Code § 34–2407.02, which gives WASA the power to file liens against the

real property "for all bills rendered which remain unsatisfied" over sixty days.

We conclude that WASA was authorized to bill Euclid Street for the delinquent tenant accounts and to file a lien against its property when Euclid Street refused to pay amounts that had been overdue for more than sixty days.

## V. Equitable Estoppel

■■■■ Euclid Street's final argument is that the trial court erred in dismissing its request for injunctive relief based on the doctrine of equitable estoppel.[10] Euclid Street's only support for this contention is the assertion that it is "fundamental[ly] unfair[ ]" for WASA to continue to provide water service to tenants who are delinquent in paying their accounts, given that Euclid Street will ultimately be required to pay for the water that WASA supplies to the tenants. In essence, Euclid Street is arguing that WASA should have exercised its authority to shut off water services to these delinquent tenants.

■■■■ In order to justify declaratory relief based on the doctrine of equitable estoppel, Euclid Street needs to show, at a minimum: (1) that WASA made a promise; (2) that Euclid Street relied on that promise and, as a result, suffered injury; and (3) that "enforcement of [WASA's] promise would be in the public interest and would prevent injustice." *District of Columbia v.*

---

9. 21 DCMR § 427.1 provides:

When bills for water and sewer service charges, meter maintenance and repairs, or sanitary sewer services are more than sixty (60) days overdue, WASA shall provide the owner of record with a written notice of intent to file a lien.

10. On appeal, Euclid Street asserts a new claim, for unjust enrichment. Because this claim was not made in the complaint, we are under no obligation to consider it here. In any event, Euclid Street's unjust enrichment claim is without merit. "Unjust enrichment

occurs when: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." *Peart v. District of Columbia Hous. Auth.*, 972 A.2d 810, 813 (D.C.2009) (quoting *News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C.2005)). This dispute arises from Euclid Street's *failure* to pay water service fees to WASA. Euclid Street has not alleged that it conferred any "benefit" to WASA and therefore its unjust enrichment claim fails.

*Brookstowne Cmty. Dev. Co.,* 987 A.2d 442, 450 (D.C.2010) (quoting *Hospitality Temps Corp. v. District of Columbia,* 926 A.2d 131, 139 (D.C.2007)). Euclid Street's complaint does not allege that WASA or its agents made any representation that Euclid Street would not be held liable for delinquent tenant accounts once the individual metering was accomplished, or that services would be discontinued if the tenants did not pay. Moreover, WASA's regulations make clear that its authority to terminate a tenant's water service is discretionary. *See* 21 DCMR §§ 426.2 (noting that WASA "may" determine that a request for termination of services will not be honored if certain conditions are present), –432.1 (stating that WASA "may" terminate water and sewer service to a tenant who has agreed to be billed directly for services and is delinquent in payment). Therefore, the complaint fails to allege facts essential for a viable claim under principles of equitable estoppel. *See Potomac Dev. Corp. v. District of Columbia,* 28 A.3d 531, 544 (D.C.2011) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' ") (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). Thus, the Superior Court did not err in dismissing the complaint.[11]

The judgment of the Superior Court of the District of Columbia is hereby

*Affirmed.*

---

11. We need not decide here whether WASA is in the position of the sovereign for the purposes of an equitable estoppel analysis. "[T]he doctrine of equitable estoppel, if applicable against the government at all, may be invoked only where there is a showing of some type of affirmative misconduct by a government agent." *Mamo v. District of Columbia,* 934 A.2d 376, 386 (D.C.2007) (quoting *Leekley v. District of Columbia Dep't of Emp't Servs.,* 726 A.2d 678, 680 (D.C.1999)).